## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROSEMARY STEELE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUSH ROSS, P.A.,<br><br>Defendant. | : **Civil Action No.:**<br>:<br>:<br>: **COMPLAINT--CLASS ACTION**<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>: |

### Nature of Action

1.     This is a class action brought under both the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla Stat. § 559.55 *et seq*., for the benefit of Florida consumers who have been the subject of certain debt collection efforts by Bush Ross, P.A. ("Defendant").

2.     By way of background, Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital

instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.     As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—once explained, "[h]armful debt collection practices remain a significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.     Nearly half of the debt collection complaints that the CFPB receives involve attempts to collect debts that consumers do not owe.[2]

5.     The FDCPA thus includes several protections against wrongful dunning of consumers, and Florida's state-law analog—the FCCPA—offers many of the same. *See* Fla. Stat. § 559.552 ("This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.").

---

[1]     *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf (last visited May 27, 2021).

[2]     *See* Consumer Financial Protection Bureau, *Fair Debt Collection Practices Act Annual Report 2021*, at 19 (2021), available at https://www.consumerfinance.gov/data-research/research-reports/fair-debt-collection-practices-act-annual-report-2021/ (last visited May 27, 2021).

6. Among the FCCPA's prohibitions: claiming or attempting to enforce a debt that is known not to be legitimate. *Id*., § 559.72(9).

7. This case centers on Defendant attempting to collect illegitimate debts in the form of inflated interest charges due to a failure to properly credit consumers for payments already made on their subject debts.

**Parties**

8. Rosemary Steele ("Plaintiff") is a natural person who at all relevant times resided in Cumberland County, Tennessee.

9. Plaintiff also maintains property in Bay County, Florida, where she visits periodically.

10. Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

11. Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, community assessments due to Towne of Seahaven Owners Association, Inc. ("Association") (the "Debt").

12. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Defendant is a law firm with its principal office in Hillsborough County, Florida.

3

14.    Defendant boasts that its "attorneys have significant experience representing secured and unsecured lenders and specialized servicers to ensure that their interests are protected throughout all aspects of the lending relationship. Sometimes debtors and lenders work together; however, when enforcing a lender's rights becomes necessary, our attorneys have the experience and expertise to handle the most even the most complex creditors' rights matters."[3]

15.    Defendant "handles creditors' rights and collection matters in nearly every industry. With its bankruptcy, real property, and trial expertise, [Defendant] is uniquely positioned to handle creditors' rights matters for [its] clients that have local, national and international collection needs."[4]

16.    Defendant also "prides itself in playing an integral part of any homeowner association's or condominium association's professional team, assisting the Board and management to prepare for and conduct meetings; answering questions about documents and pertinent law; enforcing the covenants and restrictions; drafting and negotiating contracts for provisions of services; and collecting unpaid assessments."[5]

---

[3]    http://www.bushross.com/practices-Creditors-Rights.html (last visited May 27, 2021).

[4]    *Id.*

[5]    http://www.bushross.com/industries-Community-Associations.html      (last visited May 27, 2021).

17.    Representing "hundreds of association clients throughout Florida," Defendant "provides all aspects of community association legal services, including assessment and fine collections, covenant enforcement, document amendments, assistance with corporate operations, contract drafting, contract litigation, labor and employment litigation, and administration and supervision of elections and meetings."[6]

18.    Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

19.    Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it were in default from the time that Defendant acquired it for collection.

20.    Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

21.    Defendant represented to Plaintiff that it was a debt collector, as shown below.

---

[6]      *Id.*

22.     Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat., § 559.55(7).

## Jurisdiction and Venue

23.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

24.     Venue is proper before this Court under 28 U.S.C. § 1391(b) as Defendant has its principal place of business in this district.

25.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## Factual Allegations

26.     On or about October 14, 2020, Defendant sent Plaintiff a written communication in connection with the collection of a debt resulting from Plaintiff's alleged failure to pay annual assessments owed to the Association.

27.     A true and correct copy of the October 14 communication to Plaintiff is attached as Exhibit A.

28.     This October 14 communication to Plaintiff was the first she received from Defendant in connection with the collection of the Debt.

29.     Defendant's October 14 letter begins by advising Plaintiff that it represents the Association and that certain amounts are "currently due" on Plaintiff's account with the Association:

| | |
|---|---:|
| 01/01/2020 Annual Assessment: | $160.62 |
| Interest (18% per annum): | $22.50 |
| Costs Associated with the Preparation and Delivery of this Demand: | $18.90 |
| Attorney's Fees: | $285.00 |
| TOTAL AMOUNT DUE THROUGH OCTOBER 14, 2020: | **$487.02** |

Ex. A at 1.

30.     Defendant also warns that, unless Plaintiff resolves her account, the Association "may record a Claim of Lien against [her] property no sooner than forty-five (45) days after the date of this letter." *Id.*

31.     Defendant then instructs Plaintiff to make payment to its trust account and that, "[u]nless the entire sum is paid within forty-five (45) days of the date of this letter, we may proceed with action to protect the Association's interests, including, but not limited to the recording of a claim of lien, which can result in additional attorney's fees, costs and interest." *Id.* at 2.

32.     The October 14 letter further cautions: "Any partial or lesser payment will be applied in accordance with Section 720.3085(3) of the Florida Statutes, which provides: 'Any payment received by an association and accepted shall be applied first to any interest accrued, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment.'" *Id.*

33.     Before directing Plaintiff to "govern yourself accordingly," Defendant identifies itself as a debt collector in bold print:

**NOTICE: This communication is from a debt collector. This communication is for the purpose of collecting a debt for TOWNE OF SEAHAVEN OWNERS ASSOCIATION, INC. and any information obtained will be used for that purpose.  Please see the attached Notice Under the Fair Debt collection Practice Act, 15, U.S.C. Section 1692.**

*Id.*

34.     Following receipt of Defendant's October 14 letter, Plaintiff submitted a payment of $179.52 directly to the Association.

35.     In response, on or about December 14, 2020, the Association wrote a letter to Plaintiff indicating that all payments must go through Defendant, and that the Association forwarded Plaintiff's payment to Defendant for processing.

36.     A true and correct copy of the December 14 communication to Plaintiff is attached as Exhibit B.

37.     The Association's December 14 letter reiterated that any payments received would be "applied first to any interest accrued," in accordance with Florida Statutes. Ex. B.

38.     On or about December 23, 2020, Defendant sent Plaintiff a second written communication in connection with the Debt.

39.     A true and correct copy of Defendant's December 23 communication to Plaintiff is attached as Exhibit C.

8

40.     The December 23 letter acknowledges Plaintiff's payment of $179.52 but demands payment of an additional $400. Ex. C at 2.

41.     As part of its offer to "settle" Plaintiff's account for $400, Defendant offers to waive interest charges and reduce its attorneys' fees:

```
1/1/2020 Annual Assessment.........................................................................$160.62
*Interest @ 18%.....................................................................................WAIVED
*Attorney's Fees ..................................................................................$400.00
Costs.....................................................................................................$18.90
Less Payment Received 12/22/20 ...........................................................($179.52)
TOTAL AMOUNT DUE...........................................................................$400.00
```
*Reduced for Settlement Purposes Only*

*Id.*

42.     Then, on or about February 15, 2021, Defendant sent Plaintiff another written communication in connection with the Debt.

43.     A true and correct copy of Defendant's February 15 communication to Plaintiff is attached as Exhibit D.

44.     In the February 15 letter, Defendant demands payment of a "TOTAL LIEN AMOUNT DUE THROUGH FEBRUARY 15, 2021" of $941.89. Ex. D at 1.

45.     The February 15 letter encloses a copy of a recorded Claim of Lien placed on Plaintiff's property in connection with the Debt. *Id.*

46.     Defendant further warns: "If this lien is not paid in full, by paying the amount specified above, within forty-five (45) days of the date of this letter, it is subject to foreclosure proceedings and/or an action for a civil judgment." *Id.*

47.     Defendant again advises that any partial or lesser payments received will be applied first to any interest accrued, then to any administrative late fees, then to any costs and reasonable attorney's fees incurred in collection, and finally to the delinquent assessment, per Florida law. *Id.* at 2.

48.     As well, Defendant again identifies itself as a debt collector:

> **NOTICE: This communication is from a debt collector. This communication is for the purpose of collecting a debt for TOWNE OF SEAHAVEN OWNERS ASSOCIATION, INC. and any information obtained will be used for that purpose.**

*Id.* at 1.

49.     The enclosed Claim of Lien describes Plaintiff's outstanding balance as follows:

| ASSESSMENT | | AMOUNTS DUE |
|---|---|---|
| Maintenance Assessment fee:* | | |
| 01/01/2020 Annual Assessment: | | $160.62 |
| 01/01/2021 Annual Assessment: | | $157.54 |
| Interest through date of recording claim of lien: | | $34.95 |
| | SUBTOTAL: | $ 353.11 |
| | | |
| Attorney's Fees | | $695.00 |
| Clerk of the Court (Recording Fee) | | $22.00 |
| Certified Mail (Postage) | | $37.80 |
| Clerk of the Court (Release Lien) | | $13.50 |
| | SUBTOTAL: | $1,121.41 |
| Less a payment dated 12/07/20, check no. 1423: | | ($179.52) |
| | TOTAL: | $941.89 |

*THE MAINTENANCE AMOUNT IS DUE WITH INTEREST AT EIGHTEEN PERCENT (18%) PER ANNUM FROM THE DUE DATE PURSUANT TO THE DECLARATION FOR TOWNE OF SEAHAVEN.

*Id.* at 3.

50.     Between the October 14, 2020 and February 15, 2021 collection letters—a span of four months—the interest charges on Plaintiff's account jumped from $22.50 to $34.95—an increase of more than 55%—despite her having made a payment in the interim.

51.     In May 2021, Plaintiff made another payment on the Debt in the amount of $941.89.

### Class Action Allegations

52.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following two classes:

FDCPA Class: All persons (a) with a Florida address, (b) who made a payment on a consumer debt allegedly owed to a homeowners,

condominium, or other community association, (c) after Bush Ross, P.A. had attempted to collect such debt, (d) but for whom Bush Ross, P.A. did not apply the payment to outstanding interest charges, (e) and to whom Bush Ross, P.A. thereafter mailed a debt collection communication not known to be returned as undeliverable, (f) in the one year preceding the date of this complaint, (g) whereby Bush Ross, P.A. sought to collect any amount of interest that would have been satisfied by the prior payment had Bush Ross, P.A. applied the payment to interest charges before any others.

FCCPA Class: All persons (a) with a Florida address, (b) who made a payment on a consumer debt allegedly owed to a homeowners, condominium, or other community association, (c) after Bush Ross, P.A. had attempted to collect such debt, (d) but for whom Bush Ross, P.A. did not apply the payment to outstanding interest charges, (e) and to whom Bush Ross, P.A. thereafter mailed a debt collection communication not known to be returned as undeliverable, (f) in the two years preceding the date of this complaint, (g) whereby Bush Ross, P.A. sought to collect any amount of interest that would have been satisfied by the prior payment had Bush Ross, P.A. applied the payment to interest charges before any others.

53.    Excluded from the classes is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

54.    The classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

55.    The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

56.     The classes are ascertainable because they are defined by reference to objective criteria.

57.     In addition, upon information and belief, the names and addresses of all members of the proposed classes can be identified through business records maintained by Defendant.

58.     The classes satisfy Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the classes.

59.     To be sure, Plaintiff's claims and those of the members of the classes originate from the same standardized debt collection letters utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the classes.

60.     Plaintiff satisfies Rule 23(a)(4) because she will fairly and adequately protect the interests of the members of the classes, and she has retained counsel experienced and competent in class action litigation.

61.     Plaintiff has no interests that are contrary to or in conflict with the members of the classes that she seeks to represent.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

63.     Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation could make it impracticable for the members of the classes to individually redress the wrongs done to them.

64.     There will be no unusual difficulty in the management of this action as a class action.

65.     Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the classes.

66.     Among the issues of law and fact common to the classes are:

   a. Defendant's violations of the FDCPA as alleged herein;

   b. whether Defendant is a debt collector as defined by the FDCPA;

   c. whether Defendant's attempted collection of inflated interest charges violates 15 U.S.C. § 1692e(2)(A) and/or 15 U.S.C. § 1692f(1) and/or Fla. Stat. § 559.72(9);

   d. the availability of statutory penalties; and

   e. the availability of attorneys' fees and costs.

### Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)

67.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 66 above.

68.     The FDCPA at 15 U.S.C. § 1692e(2)(A) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(2) The false representation of—

(A) the character, amount, or legal status of any debt;

69.     Defendant's February 15, 2021 communication violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of the Debt.

70.     More specifically, Defendant attempted to collect a debt on October 14, 2020 that included an interest charge of $22.50 for allegedly past due assessments of $160.62. *See* Ex. A at 1.

71.     Subsequently, Plaintiff made a payment of $179.52 in December 2020.

72.     Pursuant to Fla. Stat. § 720.3085(3), Defendant was to apply this payment first and foremost to the $22.50 interest charge, thus paying off the interest entirely given the size of the payment.

73.     Defendant nevertheless attempted to collect $34.95 in interest just a few months later, by way of its February 15 collection letter. *See* Ex. D.

74.     Between January 2020 and October 2020, interest accrued at 18% per annum, resulting in a charge of $22.50 as of October 14.

75.     Assuming interest reset and began accruing anew after Plaintiff's December 2020 payment, it is not possible for that interest charge to then reach $34.95 in such a short span of time between December 2020 and February 2021.

76.     The February 15 letter additionally attempts to collect a new annual assessment for 2021, in the amount of $157.54. *See id.*

77.     But it is not clear whether this 2021 assessment is delinquent as of February 15, and even if it were, the 2021 assessment could not possibly have accrued $34.95 in interest charges within a matter of *days* if the 2020 assessment accrued interest of only $22.50 after 10 *months*.

78.     In sum, Defendant improperly inflated the Debt by (1) not crediting Plaintiff's account for the interest payment resulting from her December 2020 payment, (2) adding inappropriate interest charges to which neither Defendant nor the Association were entitled, or both.

79.     By seeking to collect such an inflated amount, Defendant falsely represented the character, amount, or legal status of the Debt, in violation of 15 U.S.C. § 1692e(2)(A).

80.     The harm suffered by Plaintiff is particularized in that the violative debt collection letter at issue was sent to her personally and regarded her personal Debt.

81.     And the violation of Plaintiff's right not to be the target of misleading and inflated debt collection communications is a concrete injury sufficient to confer standing.

82.     Indeed, the harm Plaintiff alleges here—being misled by a debt collector as to the true amount of her alleged debt and not credited for a prior payment—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent.

83.     What's more, Plaintiff suffered actual damages in the form of her having made two payments on her account—of $179.52 in December 2020, and of $941.89 in May 2021—portions of which Defendant either (1) failed to apply to then-existing interest charges but instead applied to other charges or attorneys' fees, potentially to Defendant's own benefit at the time, or (2) later applied to improperly inflated interest charges which Plaintiff did not owe.

### Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1)

84.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 66 above.

85.     The FDCPA at 15 U.S.C. § 1692f(1) provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

86.     Defendant's February 15, 2021 communication violated 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect, or attempt to collect, the Debt.

87.     As explained above, Defendant attempted to collect an interest charge of $34.95 for allegedly past due annual assessments, despite acknowledging Plaintiff's previous payment of $179.52 in December 2020. *See* Ex. D at 3.

88.     Pursuant to Florida law, and as Defendant expressly acknowledged, that payment of $179.52 should have been applied first to any outstanding interest charges, and then to associated late fees, collection costs, attorneys' fees, and the delinquent assessments. *See* Fla. Stat. § 720.3085(3).

89.     However, Defendant did not properly credit Plaintiff's account for her payment of $22.50 in interest charges, as demonstrated by the February 15 letter seeking to collect $34.95 in interest. *See* Ex. D.

90.     Given that the delinquent 2020 assessment had accrued only $22.50 in interest between January 2020 and October 2020, assuming interest later reset

upon Plaintiff's December 2020 payment, that same assessment could not have accrued another $34.95 in interest in just two months.

91.    For that matter, even assuming the 2021 assessment had become delinquent by February 15, it could not possibly have accrued $34.95 in interest charges, at 18%, in less than two months.

92.    Defendant had no basis to demand payment of $34.95 in interest charges on February 15 given the amount of the December 2020 payment in relation to the two outstanding assessments for 2020 and 2021.

93.    In short, Plaintiff could not, and did not, owe $34.95 in interest on the Debt as of February 15, 2021.

94.    Defendant thus attempted to collect a falsely inflated debt amount owing to inflated interest charges not expressly authorized by agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1).

95.    The harm suffered by Plaintiff is particularized in that the violative debt collection letter at issue was sent to her personally and regarded her personal Debt.

96.    And the violation of Plaintiff's right not to be the target of misleading and inflated debt collection communications is a concrete injury sufficient to confer standing.

97.     Indeed, the harm Plaintiff alleges here—being subjected to attempted collection of inflated interest charges, and not given proper credit for a prior payment—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent.

98.     What's more, Plaintiff suffered actual damages in the form of her having made two payments on her account—of $179.52 in December 2020, and of $941.89 in May 2021—portions of which Defendant either (1) failed to apply to then-existing interest charges but instead applied to other charges or attorneys' fees, potentially to Defendant's own benefit at the time, or (2) later applied to improperly inflated interest charges which Plaintiff did not owe.

### Count III: Violation of Fla. Stat. § 559.72(9)

99.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 66 above.

100.    The FCCPA at § 559.72(9) provides:

In collecting consumer debts, no person shall:

* * * *

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

101.    Defendant's February 15, 2021 communication was sent in connection with an attempt to collect the Debt from Plaintiff.

102.   At the time Defendant acquired the Debt for collection, it was, upon information and belief, considered to be in default.

103.   By attempting to collect interest that Plaintiff could not and did not owe, Defendant claimed, or attempted to enforce, a debt that it knew or should have known was not legitimate.

104.   To be sure, Defendant attempted to collect a debt that included an interest charge of $34.95 for allegedly past due assessments beginning in January 2020, calculated at 18% per annum. *See* Ex. D at 3.

105.   But Defendant failed to credit Plaintiff's account for the $22.50 in interest it already had collected by way of Plaintiff's December 2020 payment, which was to apply to interest charges before any others. *See* Fla. Stat. § 720.3085(3).

106.   Had interest reset after the December 2020 payment, the outstanding assessment could not possibly have accrued an *additional* $34.95 in interest in merely a matter of weeks, particularly considering that it previously had accrued only $22.50 in interest over the course of 10 *months*.

107.   Nor could the January 2021 assessment—even presuming delinquency by February 15—possibly have accrued $34.95 in interest at 18% in a matter of weeks.

108.   The claimed interest charge of $34.95 has no basis in fact, and as a result of Defendant's collection efforts and failure to apply Plaintiff's payment appropriately to then-existing interest charges, Defendant violated Fla. Stat. § 559.72(9).

109.   The harm suffered by Plaintiff is particularized in that the violative debt collection letter at issue was sent to her personally, regarded her personal Debt, and wrongly claimed or attempted to enforce a debt that Plaintiff did not owe, and which therefore was not legitimate.

110.   Likewise, Defendant's actions created a concrete harm in that they constituted debt collection practices that the Florida legislature specifically prohibited, and those actions created the risk that Plaintiff would pay monies she did not owe.

111.   What's more, Plaintiff suffered actual damages in the form of her having made two payments on her account—of $179.52 in December 2020, and of $941.89 in May 2021—portions of which Defendant either (1) failed to apply to then-existing interest charges but instead applied to other charges or attorneys' fees, potentially to Defendant's own benefit at the time, or (2) later applied to improperly inflated interest charges which Plaintiff did not owe.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging and declaring that Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1);

C. Adjudging and declaring that Defendant violated Fla. Stat. § 559.72(9);

D. Awarding Plaintiff and members of the classes statutory damages pursuant to 15 U.S.C. § 1692k and Fla. Stat. § 559.77(2);

E. Awarding Plaintiff and members of the classes actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k and Fla. Stat. § 559.77(2);

F. Enjoining Defendant from future violations of 15 U.S.C. §§ 1692e(2)(A) and 1692f(1), and Fla. Stat. § 559.72(9), with respect to Plaintiff and the classes;

G. Awarding Plaintiff and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k, Fla. Stat. § 559.77(2), and Rule 23 of the Federal Rules of Civil Procedure;

H. Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

I. Awarding other and further relief as the Court may deem just and

proper.

## **JURY DEMAND**

Plaintiff is entitled to, and hereby demands, a trial by jury.


Dated:  May 27, 2021                     Respectfully submitted,


                                         /s/ *Jesse S. Johnson*
                                         James L. Davidson
                                         Florida Bar No. 723371
                                         Jesse S. Johnson
                                         Florida Bar No. 69154
                                         Greenwald Davidson Radbil PLLC
                                         7601 N. Federal Highway, Suite A-230
                                         Boca Raton, FL 33487
                                         Tel: (561) 826-5477
                                         jdavidson@gdrlawfirm.com
                                         jjohnson@gdrlawfirm.com

                                         *Counsel for Plaintiff and the proposed*
                                         *classes*